Good morning, Your Honor. This is Adrienne Lecoe appearing for the appellant. Yes, could you keep your voice up so that we can hear you? Is this better? It's better. Appearing for the appellant. We have similar issues in this case. It was the appellant was ordered deported by the immigration judge after applying for two waivers based on marriage and hardship, and then the H waiver as well. The main issue that I would like to make clear today is that in the first interview before the immigration service, the respondent appeared and filed for qualifying marriage entered into good faith by the alien, and then it was terminated other than through death of the spouse. This woman went to the interview, and she was questioned, and the decision of the interviewing officer was that she entered into marriage fraud based on her testimony. It took me two years to obtain the tape of the interview, and nowhere in the tape did she confess to immigration fraud or did she state that she had agreed to pay, paid, or intended to pay any money for entering into this marriage. I have to tell you that there's a question of burden of proof. I believe that she had the burden of proof to show that the marriage was not entered into for immigration purposes. However, the government had the burden of proof to show that this was a marriage for immigration benefits. And nowhere – and that is the only evidence is the interview. And the interviewing officer concluded, in her conclusion, stated that the appellant confessed and paid money, which I carefully reviewed, and there is no statement by the appellant either. But wait a minute. Do we have anything here but a good faith waiver issue? Pardon me? We don't have the merits of the marriage fraud determination, do we? We have a good faith waiver question. Yes. Okay. And that we have a record. We have, aside from whatever happened before the interviewer, we have a – there was a hearing and we have an I – we have a record before the IJ, yes? Yes. And we have a determination made by the IJ. What's the relevance of the earlier? Well, it affects every subsequent form of relief that the appellant – But you never argued that. You only argued that the good faith waiver issue. And that was separately adjudicated, was it not, before the IJ? Yes. And she had a chance to put on a complete record and there was a determination – factual determination made. It was based on the interview with the appellant. And everything was taken from that decision, but there was no evidence in the record of marriage fraud. That's my point. And everything subsequent to that, including this – the hardship waiver, there's no case law on that. And the judge indicated that there was a discrepancy in the law, in the Immigration Act, and the regulations. And, well, we can't consider – the regulations state that we can't consider any hardship subsequent to the conditional residency. So we're going to go with the Immigration Law that says you have to have accrued any hardship during the conditional residency. It's a completely different issue. I'm first trying to straighten out whether the merits of the marriage fraud issue are before us. And I do not understand that they are. I understand – I mean, they're very close because the merits of the good faith waiver are before us. But the question of whether she should have been terminated for marriage fraud is not before us. In fact, I think there was a withdrawal, so there wasn't even a determination on the merits of the marriage fraud, was there? It wasn't a joint petition. It was a waiver and – Right. So the only thing we're looking at is the waiver issue. Correct. And on that, she had a – I don't see the relevance of the interview, because she had a complete hearing where she could have put on whatever she wanted to put on, right? Yes, but I don't think there was a distinction made between a decision saying you didn't prove that it was a valid marriage not for immigration purposes and that it was a marriage for immigration benefits only. That was presented to the immigration judge. However, the decision from that affected both of the other waivers, subsequent waivers. The hardship waiver, because of the conflict, the bottom line was the decision was, well, even if we could consider – and this is from the immigration judge – even if we could consider subsequent hardship, she had – there was marriage fraud involved, so we can't entertain that in any event. When it gets to the third waiver, the H waiver, the judge said she wasn't qualified to even apply for it and never got to any discretionary. What is the third waiver? That's the relief – well, it's immigration 237A1H, the H waiver. There were cases gone about, and I must confess I couldn't understand why the judge determined that she wasn't eligible for the waiver. I went to the statute, and the statute, you know, what it enumerates are the general classes of deportable aliens, of which she was one. The only thing that I can determine is that the judge felt that because it wasn't in the charging document, fraud was not in the charging document, therefore, she was ineligible. What about – are you trying to get review of the visa denial at this point, or can you? Well, I could have gone to the district court. Right. And why didn't you – did you have to go to the district court? Well, they hadn't made a decision. I mean, in the interest of judicial time, I didn't get that until after we had applied for review for this court. All right. So is it possible to get review of the visa waiver in this court at this point? Does it somehow merge into the removal order? I'm not sure why it does. Well, that's what I put – the government would argue otherwise, but that's what I would put forth, is that you have the – since we're here, you have the power to determine that as well. The government would argue that Mr. — But if you got the visa — Pardon me? Suppose we were to reverse the visa order. We thought we could. Suppose we thought we could. Would that automatically mean that he isn't removed? Would that be – in other words, in order for us to be able to review the visa determination, it has to be that the removal order somehow hinged on it. Now, this removal order couldn't have hinged on it because it was after it, right? When was the visa approved? After the removal order or before? The visa was denied. I mean, denied. During the second – okay. There were two interviews before the Immigration Service. One was for the first waiver, and then they put her in deportation proceedings. The immigration judge waited to get the second waiver for hardship done by the Citizenship and Immigration Services, and when – at that time, at the same interview, they interviewed the husband on the – on his petition, the second husband, the U.S. citizen husband. And they said, you haven't proven any hardship and we can't consider the hardship to you because it's subsequent to the conditional residency. And since she was – it was determined that she entered into marriage fraud, you're barred from petitioning unless you can prove – they're talking to the U.S. citizen husband – unless you can prove that your wife did not enter into marriage fraud. See, a petition by a subsequent spouse cannot be approved if there is evidence of marriage fraud, and that's why I'm picking on the first one because they deduced there was marriage fraud when, in my estimation, there was not. She can't prove that it was a marriage valid at its inception simply because it was an She was – there was good faith on her part. She thought – I mean, she was 40 years old. She lived in the Philippines. She was living with her parents. She had no children, and here this family friend comes along and says, you know, you ought to be married, which – Is this violent? To the – that's the sticking point with everything that follows is this marriage fraud determination. Well, do we have before us the December 7th, 2005? Is that what we're reviewing, BIA decision? It says, As to the Respondent's application for a good faith waiver, her testimony that when she married her first United States citizen husband, she intended to make a family with him was insufficient to overcome the actual circumstances. They neither lived together as husband and wife nor had children together. The Respondent did not provide any testimony or other evidence to show that she and Kalma commingled funds, bought or held property, or took any steps to build a life together. Because it's – it would lack the most basic indicia of a couple intent on establishing life, we agree with the IJ that the Respondent's testimony was insufficient to establish good faith marriage, and the good faith waiver was properly denied. It's – that is a good faith waiver would be properly denied based on that. However, the effect of the decision of the Immigration Service was that she entered into marriage fraud, and that followed her all the way through. For every single decision is – at the end it says, well, she engaged in marriage fraud. The judge didn't even get to discredit her. But is there a basic intention that the record doesn't support the conclusion that she knew that the – or that she intended to enter into this marriage for immigration purposes? That's basically it. Exactly. Yes. And there was a finding to otherwise by the first immigration – in the first immigration hearing on the merits of the record in that case. Yes. And so the question is, why isn't there substantial evidence to support that conclusion? To support the conclusion that there was marriage fraud? That she was not a good faith marriage. I don't think there's a distinction. I don't think there was a distinction made between marriage fraud and proving that it was entered into for real – for reasons other than immigration benefits. There was – there's never been a distinction made, is my argument. And so that this is not sufficient to – what I just read does not establish – is not fraud. It's – no, it doesn't. She truly believed that she was coming to the United States to have a family, create a family. Thank you. Thank you, Your Honor. Your time is more than expired. May it please the Court. My name is Hannah Farber on behalf of the Attorney General. I'd like to begin by quickly saying that the I-130 petition is not properly before this Court because the denial of a visa petition is not a final order of removal. It's not what? It is not a final order of removal, and therefore, this Court does not have to – Well, it's not itself a final order of removal. But the question is whether it somehow – whether had – there are certain – certain questions that if decided otherwise would have negated the order of removal. And so I guess the question is if the visa order had been decided otherwise at the time it was decided, what – could the second – could the order of removal have been proper? That – that is a separate question. And I just quickly wanted to say that the Board's decision upholding DHS denial of the I-130 visa petition, this Court locks jurisdiction to consider that. I understand, but I'm asking you to explain it to me, why – why that's so. I mean, there are certain – Because under INA 242a1, this Court has jurisdiction only to hear final orders of removal. Right. Now, if the visa decision had been the opposite of what it was, if she had been granted the – if the spouse had been granted the visa at that point, would the order of removal that ultimately issued after that have been proper? I don't know the answer to that question. I think the answer is no, but I think the better answer is that those are not the facts of the case. So – But that's what – but that's why it would be reviewable if it were reviewable. In other words, if in fact that – that determination was ultimately determinative of whether she was removed – properly removed or not, then why can't we review it now? Well, actually, that's probably – I should go back, because that actually would not have altered the outcome of the case, and I'll – That's what I'm trying to find out. I'll go into that now. All right. So based on her marriage to her first U.S. citizen husband, Mr. Kalma, she was lawfully admitted as a permanent resident on a conditional basis. Because he annulled the marriage, she couldn't file the joint petition to remove the conditional basis of her permanent residence, and she filed these three waiver applications. Substantial evidence supports the Board's determination that she failed to establish that she entered into the marriage in good faith, and we have in the record, according to Petitioner's own testimony at a merits hearing, that was separate from the denial of her good faith waiver application with the district director. This is a separate merits hearing. All right. Okay. So let's assume that. Let's assume for now that that's okay. We have in the record that, according to her own testimony, she never lived with Mr. Kalma, either in the Philippines or in the United States. They never had children together. They never combined financial assets. They never bought or held property. All right. Let's assume that that aspect of the ruling is okay. All right. Now let's go to the hardship question. All right. Well, the Board correctly denied the hardship waiver because Petitioner failed to demonstrate any hardship arising during the period of. All right. Now, I find that part of the statute really weird. And I don't know that the interpretation. First of all, you seem to have you have a statute and a regulation that contradict each other, number one, as to how that waiver works. Well, I wouldn't say that they necessarily contradict one another. I would say that the statute lays out a set period of time, which is to consider circumstances occurring during the period that the Petitioner was admitted for permanent resident status on a conditional basis. When that conditional resident status terminates, no further evidence may be considered after that point. All right. Well, first of all, the statute is grammatically incorrect, because it doesn't actually say what you mean it to say, because the only is in the wrong place. So it doesn't say that he shall only consider circumstances during the period. It says he should consider circumstances occurring only during that period. So really, it doesn't even say what you're saying it's saying. It says you should consider those circumstances. It doesn't say whether you consider other circumstances. All right. Second of all, the regulation is broader than the statute.  And in those instances, we actually think the statute is broader than the statute. And thirdly, you're reading the regulation as broader than the statute, as I understand the statute as more than literal, because as what would you say, for example, if she had married this man during that period? If she had married the man during that period, and he got sick later, would that count? Well, going back to what I said before, those aren't the facts, but I know they're not the facts. Entertaining that. I'm trying to understand your view of the agency's reading of the statute. Right. Well, that would take us out of a De Novo review and into the compelling evidence review of what she argues as hardship. And I want to know your interpretation of the statute, the agency's interpretation of the statute. All right. So if the person – now, I know this is a hypothetical, but that's why it's hypothetical. Now, if she had married this man during the conditional period, but he was fine then, right, and afterwards he gets really sick, does that count as hardship? My understanding would probably be yes. Well, that's a completely non-literal reading of this provision, right, because the hardship, the circumstance that was the hardship did not arise during that period. I think it's a sensible reading, but it's not if you read this to the – I agree. It's a mouthful. The Board's interpretation is that she at least had to enter into the legal relationship with the qualifying relative during the statutorily prescribed period. Is there any Board-published presidential decision on this, on what this means? The decision that I found for the Board was looking at the merits. It's Shushteri v. INS. It's a 1994 case from this Court. No, I'm talking about a Board – BIA. Oh, a Board decision. Published presidential decision to deal with this extremely ambiguous language. Is there one? Not that I'm aware of, but I would be happy to – Do you think there ought to be one so that we would know what we're talking about? I think that would be a very good idea. Do you think we ought to remand to get one? How are we supposed to figure out what this means? I don't think that it's necessary for this particular case, because even on the merits, Petitioner failed to demonstrate any hardship either to herself or to a qualifying relative. Extreme hardship has to rise above the level of hardship that would accompany one's removal from this country. And she's argued that her removal would lead – she would have difficulty finding a job back in the Philippines, that she would be separated from her U.S. citizen husband, and that would be difficult. And that simply does not rise to the level of extreme hardship. So you think we just don't have to rely on that question? We just – I don't think you do. I think that even – even looking at the hardship to a qualifying relative, it's insufficient. But I also would like to go back and say that I think that the statute is sufficiently clear to determine that Petitioner would at least have to have entered into the legal relationship with Mr. Jones, her second U.S. citizen husband, within the period of time that she was admitted as a permanent resident on a conditional basis. And those are not the facts here. Did the BIA deny the hardship waiver because there wasn't any hardship, or did they deny it on the Southern ground? The Board denied the hardship because she failed to establish any hardship to herself arising during that two-year statutorily prescribed period. And, in fact, Petitioner herself acknowledged in her – So we really couldn't do what you're suggesting, because we would have to remand for that. In other words, you may be quite right that she didn't demonstrate any hardship to her husband, but that isn't the ground on which it was denied. That's correct. So really we couldn't do that. We'd have to stick to what was determined, and what was determined was simply that two-year period. Right. The determination was definitely the legal determination. But I would add that Petitioner actually agreed with Respondent's position in her brief to the Board and acknowledged that any hardship to Mr. Jones could not be considered. And it's only now here before this Court that, in her opening brief, that she's raised that. So she's – So you think she didn't exhaust the statute? She did not exhaust it. Okay. If I'll – if I may, I'll turn lastly to the waiver of inadmissibility. And the statute specifies that the Attorney General may waive removal in certain circumstances where an alien is removable on the ground that she was inadmissible at the time of admission. Petitioner was – was not inadmissible at the time of admission. In fact, she was lawfully admitted as a permanent resident on a conditional basis. And it was only after she was lawfully admitted that her permanent resident status was terminated, and she was therefore charged with removability. The charge of removability is separate from inadmissibility, and therefore she was statutorily ineligible for this waiver. And that actually is entirely consistent with this Court's holding in Garrowen. Any further questions? Thank you. Thank you. The case just argued is submitted for decision.
judges: Strom, Schroeder, Berzon